834 Bay Ridge LLC v Castillo (2024 NY Slip Op 24053)

[*1]

834 Bay Ridge LLC v Castillo

2024 NY Slip Op 24053

Decided on February 20, 2024

Civil Court Of The City Of New York, Kings County

Harris, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 20, 2024
Civil Court of the City of New York, Kings County

834 Bay Ridge LLC, Petitioner,

against
Victorina E. Castillo and CARL GUTHWIN, Respondents/Tenants

L&T Index No. 324648/22

Petitioner's attorneys:
Kevin Kerven Tung, P.C
Attn: Jiajie Cao, Esq.
136-20 38th Avenue, Suite 3D
Flushing, N.Y. 11354
jcao@kktlawfirm.com
Respondents' attorneys:
The Law Offices of Michael J.S. Pontone, Esq. P.C.
Attn; Michael Jay Santino Pontone, Esq.
233 Broadway
Suite 2340
New York, N.Y. 10279
michael@pontonelaw.com

David A. Harris, J.

After the expiration of a Fourteen Day Notice to Tenant For Non-Payment of Rent dated September 12, 2022 (NYSCEF Doc. No. 1) (Rent Demand), petitioner commenced this summary nonpayment proceeding seeking outstanding rent for apartment 2R (Apartment) in the building located at 834 Bay Ridge Avenue, in Brooklyn (Building).
On November 3, 2022, respondent Victorina E. Castillo (Castillo) appeared (NYSCEF Doc. No. 3), and on November 4, 2022, Castillo and respondent Carl Guthwin (Guthwin) (collectively Respondents) interposed an answer with counterclaims (NYSCEF Doc. No. 5). In addition to setting forth admissions and denials of various paragraphs of the petition, the answer sets forth affirmative defenses of lack of standing, lack of privity, incorrect rent alleged in both [*2]the Rent Demand and the petition, waiver, and estoppel. The first counterclaim, also stated as an affirmative defense, is retaliatory eviction, and the second counterclaim seeks attorney's fees.
The court transferred the proceeding for trial after a series of adjournments. This court scheduled trial to commence on November 30, 2023 (NYSCEF Doc. No. 15). On November 30, 2023, petitioner uploaded 14 documents to NYSCEF (NYSCEF Doc. Nos. 16, 17,18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29) and the parties executed a stipulation (NYSCEF Doc. No. 30). In that stipulation, the parties stipulated to petitioner's prima facie case, and to the admissibility of the uploaded documents, and scheduled submission of memoranda, as they both acknowledged the outstanding issues were purely legal rather than factual.
There is no dispute between the parties as to the number of months of rent outstanding; rather, their dispute is as to the amount of that rent. Petitioner asserts that the collectible legal rent is $1929.67 per month. Petitioner's predecessor and respondents executed a lease for a one-year period commencing on February 1, 2018, at a monthly rent of $1845.39 (NYSCEF Doc. No. 17). That lease included a rider providing that there would be a discount in the rent to $1475 and that "[t]he discount in the monthly rent is for the following services to be done at the building" and addressed a variety of tasks involving garbage removal, mopping, cleaning, snow removal and minor repairs. It stated that the agreement was to be of one year's duration, subject to renewal, or alternatively petitioner could serve a 30-day notice to resume paying rent with a cessation of the obligation to perform the work.
The parties to that lease executed a renewal lease for a one-year term commencing on February 1, 2022 at a rate of $1929.67 (NYSCEF Doc. No. 19). On April 19, 2022, petitioner and petitioner's predecessor in interest executed a deed and an assignment and assumption of lease (NYSCEF Doc. No. 18) at a rate of $1929.67. On June 28, 2022, petitioner, through its counsel, issued a 30-day notice to begin paying the full monthly rent and notifying respondents that the services addressed in the rider were no longer needed. Respondents did not begin to pay the full rent, and commenced a case under the Fair Labor Standards Act.
Petitioner argues that the rent of $1475 did not constitute a preferential rent, that after expiration of the 30 day notice, respondents were obliged to pay $1929.67 per month, and that petitioner is entitled to attorney's fees. In opposition, respondent asserts that this is a case of first impression, and urges that this court reach the same conclusions as the Hon. Daniele Chinea in West Side Marquis v De Jourdan (22 NY Slip Op 32707[U] [Civ Court NY County]).
Under the Rent Stabilization Code, "[w]here the amount of rent charged and paid by the tenant is less than the legal regulated rent for the housing accommodation, such rent shall be known as the "preferential rent" (RSC §2521.2[a]). Pursuant to amendments made part of the Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36) (HSTPA), the scope and effect of a preferential rent was fundamentally altered so that preferential rents would exist only for a single lease term, after which the rent charged as a preferential rent became the base rent upon which all future increases would be calculated.(RSC §2521.2[d]).
Not every reduced rent, however, has been held to fall within the definition of a preferential rent. While the HSTPA included provisions that altered the effects of offering a preferential rent, it included no provisions that modified in any material way the definition of a preferential rent. Thus, cases determining whether a rent constitutes a preferential rent that were decided before the effective date of the HSTPA are no less binding now as a consequence of its implementation.
A rider providing for reduced payment if made by the fifth of the month is not a [*3]preferential rent but a temporary reduction, and the court also held it to constitute an unconscionable late fee. (Matter of Bandil Farms Inc. v New York State Div. of Hous. and Community Renewal, 190 AD3d 403 [1st Dept 2021]). In contrast, rent lowered because of market conditions at the time a lease was offered did constitute a preferential rent (Missionary Sisters of the Sacred Heart, III v New York State Div. of Hous. and Community Renewal, 283 AD3d 284 [1st Dept 2001]). A distinguishing factor between the type of reduced rent offered in Bondil and preferential rents under the statute is readily apparent — consideration. In Bondil, no preferential rent was found to exist where lower rent was the consideration for early payment. While the court found that what had actually been created was an unconscionable late fee, it specifically determined that no preferential rent existed. In contrast, in Missionary Sisters, market conditions, a factor unrelated to the tenancy itself, resulted in a determination that a preferential rent existed.
Here, the lease rider specifically designated work to be done, and provided that "[t]he discount in the monthly rent is for the following services to be performed at the building." The rider set the term, made it subject to renewal and included provisions for its termination. The reduced rent constitutes consideration for the labor. That respondent has brought a complaint under the Fair Labor Standards Act (29 USCA §201 et seq.) suggests an acknowledgment by respondent that the reduced rent was compensation for labor, and is inconsistent with the notion that, notwithstanding the end of the labor, the lowered rent should become a permanent floor upon which all future rents should be based.
Respondent relies heavily on the decision of the Hon. Daniele Chinea in West Side Marquis LLC v De Jourdan (22 NY Slip Op 32707[U] [Civ Court NY County]). That proceeding, however, is readily distinguishable from this one. In De Jourdan, the building had left the Mitchell-Lama program and was subject to stabilization. In resolution of a dispute, the landlord and tenants executed an agreement controlling rent adjustments, but limiting the benefits of the agreement to a particular class of potential successors that did not include respondent, though he qualified as a successor under rent stabilization. The court found that the HSTPA superseded any existing agreement and held that respondent was entitled to be offered the reduced rent. In De Jourdan, however, the central issue was not whether a preferential rent existed, as that was undisputed, but whether its benefits inured to respondent under the more expansive provisions of the HSTPA and Rent Stabilization Code, or were limited by agreement, albeit one apparently approved by the DHCR. There was neither the requirement of early payment nor of services to be performed to obtain the benefit of the reduced rent. Rather, one merely needed to fall within a class of potential successor tenants.
The court finds that it was the intent of the parties to create a preferential rent, and the court finds that the lease does not create a preferential rent under the Rent Stabilization Code. Rather, it was a discount offered in consideration for specified services. If the lease rider had reduced the rent by 90% in exchange for services, a permanent reduction notwithstanding the fact that the services were no longer to be performed would create a windfall, and every month in which the lowered rate remained while no services were performed would functionally increase the compensation for those months in which work was performed. If the 30 day notice were served after one month, and services ended after one month, under respondent's rationale, one month of work would result in 12 months of compensation, and all future rents would be based on the lowered rent. That would be an absurd result. That the reduction here was smaller does not make respondent's theory any more viable.
The lease and rider did not create a preferential rent. Upon the expiration of the 30 day notice, on July 31, 2022, respondent became obliged to pay $1929.67 per month. The petition seeks rent at $1475 per month from April 2022 through July 2022 and at $1929.67 per month thereafter through September 2022. The ledger admitted into evidence shows $1929.67 per month due through June 2023, and shows $454.67 per month due from July through November 2023. The total sought is $29,399.72.
Petitioner is granted a final judgment in the sum of $29,399.72, with issuance of the warrant stayed five days. This is the decision and order of the court.
Dated: February 20, 2024
Brooklyn, New York
David A. Harris, J.H.C.